## PUGH *vs.* GILLAM.

A British seaman, on board a British vessel, of which a British subject is master, may, when discharged by the master in a port of the United States, without any fault on the part of the seaman, sue for and recover his wages in a state court.

APPEAL from the superior court of the city of San Francisco. The facts are stated in the opinion of the court.

*James McGay*, for the plaintiff.

*John Chetwood*, for the defendant.

*By the Court*, BENNETT, J. The plaintiff was a British seaman on a British ship. The defendant, who was master of the ship, was also a British subject. Upon the arrival of the ship at San Francisco, and seven days before the expiration of the time for which the plaintiff was hired, the defendant discharged him without paying his wages. The court below found the fact specially that the plaintiff was *not a deserter*, but was *discharged* by the defendant. This action is brought to recover the plaintiff's wages.

The only question presented by the case is whether a state court can, or ought to, take jurisdiction of the action. The counsel for the defendant claims that the parties ought to be remitted to the forum of their own country. I think, however, that in a case like the present, the state courts not only may, but ought to take cognizance of the action. The period of the plaintiff's service was nearly ended; he had shipped for eighteen months, and but seven days of the whole term remained unexpired. The ship was about proceeding on a long voyage, which the plaintiff could be under no obligation to perform; and even if he had left the vessel, without permission of the master, I should have thought him entitled to his wages. But he did not leave without permission. He was discharged by the master, as he ought to have been. The master had no right to require the plaintiff to proceed with him on the new voyage, which he was then about to commence; and the discharge does not appear to have been on the ground of any wrongful act of the plaintiff. Under these circumstances there is no excuse for the non-payment of wages. It is said that the comity of nations requires us to dismiss this suit. On the contrary, I think it is our duty to foreign nations to see that their seamen are not discharged, unpaid, in our harbors. We ought not to deny to their seamen the right to prosecute in our courts for wages which the master refuses to pay. However this may be, we surely have the right to protect ourselves against the evils which might, and probably would result, from permitting masters of foreign vessels to discharge their seamen and hands in our harbors, without money, acquaintances, or resources of any kind, and thus leave them to become, perhaps, a burden on the community. There is probably not a court in the whole empire of Great Britain which would deny redress to the plaintiff in this case, and the government of Great Britain cannot complain, on the ground of the comity of nations, that we administer the same justice that would be meted out by any of its own courts. It would not ask that we should turn one of its subjects out of our courts, and send him ten or fifteen thousand miles to sue for and recover the sum of two hundred and fifty dollars.

Pugh *v.* Gillam.

But irrespective of the reason of the thing, the case is clear upon authority. In *Johnson* v. *Dalton*, (1 *Cow. Rep.* 543,) it was held, that where a British seaman was legally discharged from a British ship in this country, he might maintain an action in our courts against the master, who was also a British subject, for a tort committed on the high seas, while the relation of master and seaman existed. It is laid down in *Curtis' Rights and Duties of Merchant Seamen*, (*p.* 359,) as the result of the authorities establishing the rule in this country, that where the voyage is terminated, either by its completion or abandonment, or there is a dissolution of the contract by the wrongful act of the owner or master, the suits are entertained ; but where the voyage has not terminated, or the seamen have bound themselves to abide by the decisions of their own tribunals, they are remitted to their own forum. Mr. Benedict in his *Admiralty Practice*, (*sec.* 282,) concludes an examination of the subject by saying : " In the present state of international intercourse and commerce, " all persons in time of peace have the right to resort to the " tribunals of the nation where they may happen to be, for the " protection of their rights. The jurisdiction of the courts over " them is complete, except when it is excluded by treaty." This is also in substance the conclusion to which Judge Story comes in *The Jerusalem*, (2 *Gallison*, 190,) and is, I think, supported by abundant authority. (*See Willendson* v. *The Forsoket*, 1 *Pet. Admiralty Decisions*, 197 ; *Moron* v. *Boudin*, 2 *id.* 415 ; *Weiberg* v. *The St. Oloff*, 2 *id.* 428.)

I think the judgment of the court below should be affirmed.

Ordered accordingly.